UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VICTORIA HAYS, as Personal Representative of the Estate of Jessica L. Ruiz, deceased, and MARTIN RUIZ, Individually and as the Father of Jessica L. Ruiz, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO. 3:08-CV-518-AS-CAN ) |
| CHRISTOPHER D. BARDASIAN, RICHARD WEIGANDT, and MARTIN RUIZ, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on several motions filed by Defendant Richard Weigandt ("Mr. Weigandt"), including a Motion for Judgment on the Pleadings (Doc. No. 35), a Motion to Dismiss for failure to state a claim (Doc. No. 36), a Motion to Dismiss Martin Ruiz's cross-claims for failure to state a claim (Doc. No. 44), and a Motion for Judgment on the Pleadings as to Martin Ruiz's cross-claims (Doc. No. 45). The claims made by Victoria Hays ("Ms. Hays"), as Personal Representative of the Estate of Jessica Hays ("Jessica"), who is deceased, and the cross-claims made by Martin Ruiz ("Mr. Ruiz") similarly allege wrongful death, violation of I.C. 7.1-5-10-15.5, and joint enterprise, against Defendants Christopher Bardasian ("Mr. Bardasian") and Mr. Weigandt (collectively "Defendants") based on the events of July 4, 2008 resulting in Jessica's tragic death. The motions are considered with respect to the Second Amended Complaint filed on January 30, 2009, (Doc. No. 32) and the Cross-claims filed on March 4, 2009 (Doc. No. 41).

On April 7, 2009, the Court ordered that Mr. Ruiz be re-designated as a plaintiff, as agreed to by the parties, and therefore both Ms. Hays and Mr. Ruiz are the named plaintiffs ("the Plaintiffs")

in this matter. As such, Mr. Weigandt relies on, and the Court considers, a single Memorandum of Law (Doc. No. 37) filed on February 12, 2009, in support of his motions. No responses were filed. For the reasons discussed below, the motions are **DENIED**, thereby allowing the parties time to engage in discovery and proceed as necessary under Rule 56.

## I. Jurisdiction

On October 8, 2008, Ms. Hays filed a Complaint in Kosciusko Circuit Court which was removed to federal court by Defendants on November 7, 2008. Jurisdiction is proper on the basis of diversity, under 28 U.S.C. § 1332 (Doc. No. 18).

## II. Standard of Review

A complaint must allege facts to state a claim to relief that is plausible on its face. *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), or alternatively, for judgment on the pleadings pursuant to Rule 12(c), the court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them. *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977 (7th Cir. 1999); *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). *See also Northern Indiana Gun & Outdoor Shows, Inc., v. City of South Bend*, 163 F.3d 449, 452, n. 3 (7th Cir. 1998) (the primary difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that a party may file a 12(b) motion before its answer, but a party may move to dismiss the claim under Rule 12(c) after the pleadings are closed but within such time as not to delay the trial). In ruling on a motion to dismiss the cross-claim, a court uses the same standards of review that apply to claims made in the main complaint. *See Cozzi Iron & Metal, Inc. v. U.S. Office*

*Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (the court accepts all well-pleaded allegations in the counterclaim as true, and draws all reasonable inferences in favor of the counterclaim plaintiff). But the court admits only allegations of fact, and is not required to accept legal conclusions. *Fries v. Helsper,* 146 F.3d 452, 456 (7th Cir. 1998); *Challenger v. Local Union No. 1 of Intern. Bridge, Structural, and Ornamental Ironworkers, AFL-CIO*, 619 F.2d 645, 649 (7th Cir. 1980). The court's inquiry is not whether plaintiff will ultimately prevail in a trial on the merits, but whether the plaintiff should be afforded an opportunity to offer evidence in support of the claims. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*).

A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). Under federal pleading rules, a plaintiff is not limited to or bound by the legal characterizations of his claims contained in the complaint. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Although the complaint itself need not specifically or correctly identify the legal basis for any claim, in response to a motion to dismiss that raises issues as to a claim, the plaintiff must identify the legal basis for the claim and make adequate legal arguments in support of it. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041-42 (7th Cir. 1999).

For purposes of Rule 12(c), pleadings include the complaint, the answer, and any written instruments attached as exhibits. *See*, Fed. R. Civ. P. 10(c); *Northern Indiana Gun*, 163 F.3d at 453 (concluding that the broader interpretation of "written instrument" comports with the generous nature in which we view pleadings, and therefore "written instrument," as used in Rule 10(c), includes

documents such as affidavits) (citing *Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969), *overruled on other grounds by, City of Kenosha v. Bruno*, 412 U.S. 507 (1973)). *But see*, *Rose v. Bartle*, 871 F.2d 331, 339-40, n. 3 (3d Cir. 1989) (concluding that affidavits are not written instruments). Mr. Weigandt's affidavit was not attached to his Answers (Doc. No. 34, 43), it was attached to his Memorandum of Law in support of dismissal (Doc. No. 37-2), and therefore such an affidavit is proper for summary judgment purposes, but is not considered in today's ruling. Furthermore, references to police reports, statements made to the investigating officers, toxicology results, and witness disclosures, as referred to in Defendant's memorandum, yet not attached as exhibits to the pleadings, are not considered because they are also outside the scope of the pleadings.

### III. Factual Background

On July 4, 2008, a collision occurred when Mr. Bardasian, driving his 2008 BMW M3L, crossed the center line while traveling northbound on East Wawasee Drive (south of County Road 1250 North in Kosciusko County), and struck Jessica who was driving her 2000 Ford Ranger Pickup south on East Wawasee Drive ("the collision"). The collision forced Jessica's Ford off of the road, and it burst into flames wherein Jessica died.

Prior to the collision, the facts of the complaint and cross-claim taken as true, reveal that Mr. Weigandt, father-in-law to Mr. Bardasian, witnessed his son-in-law consume alcohol and willfully furnished him with alcohol knowing that Mr. Bardasian was visibly intoxicated. Then, both Mr. Weigandt and Mr. Bardasian went on a joint venture (with a "mutual business, financial or pecuniary interest") to purchase golf clubs. (Seconded Amended Complaint, ¶¶ 27, 42, 43; Cross-Claims, ¶ 27, 42, 43). As a passenger in Mr. Bardasian's vehicle, Mr. Weigandt witnessed his son-in-law driving recklessly at an excessive rate of speed in a residential area, running another vehicle off of the

roadway. Mr. Weigandt had the opportunity to stop Mr. Bardasian from thereafter causing harm to Jessica, yet breached the duty to the public and to Jessica by failing to control and manage the operation of the automobile in a proper manner. Mr. Bardasian's intoxication was the direct and proximate cause of Jessica's death, and Plaintiffs' claim that such actions were "willful, malicious, reckless, wanton, grossly negligent, negligent *per se*, and negligent." *Id*. ¶ 30.

Ms. Hays, Jessica's custodial mother, and Mr. Ruiz, Jessica's non-custodial father, now sue Defendants for the following: (1) wrongful death; (2) violation of I.C. 7.1-5-10-15.5 by furnishing alcohol to someone intoxicated who then causes harm; and (3) breach of the duty to control the car while engaging in a joint enterprise. At the time of her death, Jessica was nineteen years old, single, and a full time student at Indiana University.

### IV. Discussion

**(1) Wrongful Death and Joint Enterprise**

"When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission." I.C. 34-23-1-1.

The action may be maintained against the person whose wrongful act or omission caused the injury or death of the child. I.C. 34-23-2-1(b). Pursuant to the Child Wrongful Death Act, a decedent is a child if, at the time of death, she is (1) unmarried; (2) without dependents; and (3) under twenty (20) years of age. I.C. 34-23-2-1(a)(1); *Ledbetter v. Ball Memorial Hosp.*, 724 N.E.2d 1113, 1116

(Ind. Ct. App. 2000). Thus, Jessica was a child at the time of her death,[1] and her parents may maintain an action against the person whose wrongful acts or omissions caused her death. I.C. 34-23-2-1(b); *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind. 2001) (the purpose of the wrongful death statute was "to create a cause of action to provide a means by which those who have sustained a loss by reason of the death may be compensated") (citing *In re Estate of Pickens*, 263 N.E.2d 151, 155 (Ind. 1970)).

To premise recovery on a theory of negligence, as the Plaintiffs do in this case, the following three elements must be established: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Holt v. Quality Motor Sales, Inc.*, 776 N.E.2d 361 (Ind. Ct. App. 2002). *See also Tom v. Voida*, 654 N.E.2d 776, 787 (Ind. Ct. App. 1995) (the elements of the claim for wrongful death are a duty owed by the defendant to the decedent, breach of that duty, and an injury proximately caused by the breach). The issue here is whether Mr. Weigandt had a duty to prevent Mr. Bardasian's reckless driving.

Whether a defendant owes a duty to a plaintiff is generally a question of law. *Franklin v. Benock*, 722 N.E.2d 874, 878 (Ind. Ct. App. 2000). However, resolution of that legal question depends on several factors. *See id.* (stating that courts consider and balance three factors in determining whether a defendant owed a duty to a plaintiff: the relationship between the parties, the reasonable foreseeability of harm, and public policy concerns); *St. John Town Board v. Lambert*, 725

---

[1] While the record does not indicate whether or not Jessica had dependents, and Defendants allege no facts suggesting that she did, the Court presumes at this stage that she had none.

N.E.2d 507, 519 (Ind. Ct. App. 2000) (finding that the passenger was not contributorily negligent).

The Plaintiffs allege that Mr. Weigandt, who knew that his son-in-law was intoxicated and observed him driving recklessly, had the opportunity to stop Mr. Bardasian from causing harm to Jessica, yet failed to do so, and thus, breached the duty to the public and to Jessica by failing to properly control and manage the operation of the automobile resulting in Jessica's death. Further, the accident occurred during Mr. Bardasian and Mr. Weigandt's joint venture to purchase golf clubs for a "mutual business, financial or pecuniary interest." *See*, Seconded Amended Complaint, ¶¶ 27, 42, 43; Cross-Claims, ¶ 27, 42, 43. Thus, based on Mr. Weigandt's alleged right to control Mr. Bardasian during their joint venture, Plaintiffs assert that Mr. Weigandt owed a duty to Jessica to stop Mr. Bardasian's reckless intoxicated driving.

In opposition, Mr. Weigandt argues that under Indiana law he owed no duty to Jessica, or to the public at large, because no special relationship existed which resulted in any duty.

The law is clear that there are circumstances under which one who is present, actively participating or directing the operation of the vehicle may be liable for the things which he did or failed to do irrespective of what might have been done by the person behind the steering wheel and regardless of the liability of the driver. *Haney v. Meyer*, 215 N.E.2d 886, 887 (Ind. Ct. App. 1966) (citing 60 C.J.S. *Motor Vehicles* § 444). Also, in Indiana, although "[a] passenger, having no control over the management of the vehicle, cannot have the driver's negligence imputed to him or her," *Benson v. Sorrell*, 627 N.E.2d 866, 867 (Ind. Ct. App. 1994), the negligence of the driver *has* been imputed to the passenger if the driver and passenger are found to be in an agent/principal relationship. *Id*. at 867-68. *See also Baltimore and Ohio Railroad Co. v. Patrick*, 166 N.E.2d 654, 661 (Ind. Ct. App. 1960) (finding that the negligence of the driver of a motor vehicle may be imputed

to the passenger where the passenger controls, or has a right to control, or where the driver and passenger are engaged in a common enterprise or where the driver is engaged in an enterprise of any kind for the use and benefit of the passenger and is subject to the passenger's control) (citations omitted); *Stallings v. Dick,* 210 N.E.2d 82, 91 (Ind. Ct. App. 1965) ("To establish a joint enterprise, an essential element is the existence of joint control over the management and operation of the vehicle and over the course and conduct of the trip. There must be a community of interest in the object and purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto. As between the parties, there must be a contract, either express or implied, to that effect") (citations and emphasis omitted).

  Indiana courts have many times considered whether the relationship of a driver and the passenger, and the circumstances and purpose of the trip being taken, allowed a claim for negligence against the passenger. *See Keck v. Pozorski,* 191 N.E.2d 325 (Ind. Ct. App. 1963) (finding that a joint enterprise existed because the wife owned the vehicle being driven by her husband and both were traveling to work together in order to enhance family finances); *Patrick*, 166 N.E.2d at 662 (evidence presented a jury question as to whether the passenger was engaged in a joint enterprise with his brother-passenger and his sister-in-law-driver as all parties were taking a side trip to see a camping site on the way to a funeral); *Vance v. Wells*, 159 N.E.2d 586, 589 (Ind. Ct. App. 1959) (regarding an accident that occurred during a planned shopping trip between a mother and daughter, where the court determined that if the jury found that the automobile occupant (the mother) was a passive guest, then the guest was not chargeable with the driver's negligence, but if the jury found that the occupant was on a joint venture with the driver, then any negligence on the part of the driver could be imputed to the occupant). *But see*, *Benson*, 627 N.E.2d at 869 (finding that merely giving

8

a driver directions does not amount to control over the vehicle, as it was the manner in which the driver drove the car, and not the route he took, that caused the accident); *Leuck v. Goetz*, 280 N.E.2d 847, 854-55 (Ind. Ct. App. 1972) (finding no evidence which permitted any reasonable inference that a joint enterprise existed between the husband-driver and the wife-passenger, when they embarked upon a journey with a common destination, for purely a social purpose— to attend church and a get-together with relatives); *Holmes v. Combs*, 90 N.E.2d 822 (Ind. Ct. App. 1950) (reasoning that a wife is not engaged in a joint enterprise with her husband simply because they were married and traveling together in an automobile to make a social visit).

Moreover, a person injured by the negligence of the driver, in this instance Jessica, ordinarily cannot know the real relationship between the driver and the passenger. *Jones v. Kasper*, 33 N.E.2d 816, 822 (Ind. Ct. App. 1941) (rejecting the joint tortfeasor passengers' claim that the following principle is limited solely to joint possession arising from joint hiring or ownership: "The fact that the driver and another riding with him are in joint possession of the vehicle is sufficient to make any journey taken by them therein a joint enterprise irrespective of whether the journey is…made for a common business purpose. This is so not only when the joint possession arises from a joint hiring but also when it results from a joint ownership"). In fact, Mr. Weigandt and Mr. Bardasian may not know it themselves. *Id*.

As discussed in *Kasper*, although we know Mr. Weigandt was the father-in-law to Mr. Bardasian, it is very difficult to know the true relationship between them, and whether in fact, there existed the type of relationship allowing the negligence of Mr. Bardasian to be imputed to Mr. Weigandt, or whether Mr. Weigandt may be liable for the things which he did or failed to do irrespective of what might have been done by Mr. Bardasian. *See*, *supra*. *See also*, 34 Am. Jur.

9

Trials *Failure to Protect the Public From an Intoxicated Driver* § 499 (2009); 50 Am. Jur. Proof of Facts 2D *Liability of Motor Vehicle Passenger for Accident* § 677 (2008); 25 Robin Cheryl Miller, Causes of Action, § 93 (1st Series 2008).

Therefore, although Defendants dispute whether the type of relationship existed which would allow Mr. Weigandt to be liable for the death of Jessica, producing evidence outside of the pleadings which negates the relationship is not proper at this stage. Accepting as true all well-pleaded factual allegations in the cross-claims and the inferences reasonably drawn from them, as required under Rules 12(b)(6) and (c), combined with our standards for federal pleading under Rule 8(a), relief for the claim of the wrongful death of Jessica against Mr. Weigandt is plausible. *See*, *Patrick*, 166 N.E.2d at 661-62 (finding that conflicting evidence on questions of negligence, proximate cause, and contributory negligence, and whether the driver and passenger engaged in a joint enterprise, were ones of fact for the jury). Accordingly, this Court cannot permit dismissal at this time.

**(2)     Violation of I.C. 7.1-5-10-15.5**

Ms. Hays and Mr. Ruiz sue Mr. Weigandt for committing a violation of I.C. 7.1-5-10-15.5 by furnishing alcohol to Mr. Bardasian who was known to be intoxicated and then caused Jessica's death. Specifically, Plaintiffs allege that Mr. Weigandt witnessed his son-in-law consume alcohol and willfully furnished him with alcohol knowing that he was visibly intoxicated. Thereafter, both Mr. Weigandt and Mr. Bardasian went to purchase golf clubs, and Mr. Bardasian's reckless driving while intoxicated directly and proximately resulted in Jessica's death.

Indiana Code 7.1-5-10-15(a) states in pertinent part: "It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated." I.C. 7.1-5-10-15.

Indiana Code 7.1-5-10-15.5 states:

> (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.
> (b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:
>> (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and
>> (2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.
>
> (c) If a person who is at least twenty-one (21) years of age suffers injury or death proximately caused by the person's voluntary intoxication, the:
>> (1) person;
>> (2) person's dependents;
>> (3) person's personal representative; or
>> (4) person's heirs;
>
> may not assert a claim for damages for personal injury or death against a person who furnished an alcoholic beverage that contributed to the person's intoxication, unless subsections (b)(1) and (b)(2) apply.

I.C. 7.1-5-10-15.5. *See also*, 48A C.J.S. *Intoxicating Liquors* § 666 (2008); 1 BARRY LINDAHL, MODERN TORT LAW: LIABILITY & LITIGATION, § 3.20 (2d ed. 2008); 15 James Lockhart, Causes of Action, § 1 (1st Series 2008); 1A ANNE E. MELLEY, INDIANA LAW ENCYCLOPEDIA, § 40 (2008); STUART M. SPEISER & JAMES E. ROOKS, JR., RECOVERY FOR WRONGFUL DEATH, §1:20 (4th ed. 2008); 4 FLEM WHITED III & DONALD H. NICHOLS, DRINKING/DRIVING LITIGATION: CRIMINAL & CIVIL, § 28:18 (2d ed. 2009); Edward L. Raymond, Jr., Annotation, *Social Host's Liability for Injuries Incurred by Third Parties as a Result of Intoxicated Guest's Negligence,* 62 A.L.R. 4th 16 (1988).

Mr. Weigandt relies on a police report of the accident in support of his argument that Mr. Bardasian was not sufficiently intoxicated to be visibly intoxicated, nor to be the proximate cause of the accident. Mr. Weigandt also produces an affidavit testifying that he did not furnish any alcohol to Mr. Bardasian, nor did Mr. Bardasian exhibit any signs of intoxication. Yet, as previously mentioned, the police report and the affidavit cannot, and will not, be considered for purposes of the pending motions. Additionally, witnesses disclosures made pursuant to Fed. R. Civ. P. 26 are not within the pleadings.

Essentially, Mr. Weigandt disputes the facts supporting Plaintiffs' claim under I.C. 7.1-5-10-15.5; however, were this Court to agree with Mr. Weigandt's position, it would violate the obligation to accept Plaintiffs' well-pleaded allegations in the cross-claims as true. Merely because Mr. Weigandt contests the claims made, does not mean that the claims have not been properly pled in order to avoid dismissal.

In this case, Plaintiffs should be afforded an opportunity to offer evidence in support of the claim pursuant to I.C. 7.1-5-10-15.5, as recognized and considered by Indiana. *See Culver v. McRoberts*, 192 F.3d 1095 (7th Cir. 1999); *Gariup Construction Co., Inc. v. Foster*, 519 N.E.2d 1224 (Ind. 1988) (finding that a violation of the statute requires proof that the provider either had as his conscious objective, or was aware of a high probability, that he was providing alcoholic beverages to an intoxicated recipient; and, finding that the determination of an actor's knowledge requires the trier of fact to resort to reasonable inferences based upon examination of the surrounding circumstances in order to reasonably infer its existence); *Murdock v. Fraternal Order of Eagles*, 779 N.E.2d 964 (Ind. Ct. App. 2002) (holding that "[t]he furnisher's knowledge must be judged by a subjective standard") (citation omitted); *Vanderhoek v. Willy*, 728 N.E.2d 213 (Ind. Ct. App. 2000)

(when determining whether a furnisher of alcoholic beverages knew a person was intoxicated, the court looks to what and how much a person was known to have consumed, the persons behavior at the time, and the person's condition) (citation omitted); *Weida v. Dowden*, 664 N.E.2d 742 (Ind. Ct. App. 1996) (holding that the plaintiff may pursue a common law negligence claim despite the provisions of the Dram Shop Act); *Bowling v. Popp*, 536 N.E.2d 511 (Ind. Ct. App. 1989); *Campbell v. Board of Trustees of Wabash College*, 495 N.E.2d 227 (Ind. Ct. App. 1986); *Ashlock v. Norris*, 475 N.E.2d 1167 (Ind. Ct. App. 1985)[2] (reasoning that proof of the recipient's condition is not capable of simple emphatic proof as would be the execution of a written instrument, but it is a very fact sensitive determination).

Accordingly, this Court concludes that Plaintiffs have properly stated a claim for relief against Mr. Weigandt upon the alleged violation of I.C. 7.1-5-10-15.5, which precludes a finding that no viable cause of action exists upon which relief can be granted.

---

[2] In *Ashlock,* the Court observed:
> Doubtless, the spectre of civil liability may temper the spirit of conviviality at some social occasions, especially when reasonably observant hosts decline to serve further alcoholic beverages to those guests who are obviously intoxicated and perhaps becoming hostile. Nonetheless, in this context, we must surely balance any resulting moderation of hospitality with the serious hazard to the lives, limbs, and property of the public at large, and the great potential for human suffering which attends the presence on the highways of intoxicated drivers. In doing so we need not ignore the appalling, perhaps incalculable, cost of torn and broken lives incident to alcohol abuse, in the area of automobile accidents alone.

*Ashlock*, 475 N.E.2d at 1169, n. 2 (citing *Coulter v. Sup. Ct. of San. Mateo Co.*, 577 P.2d 669, 675 (Cal. 1978)).

## V. Conclusion

Based on the foregoing, the Court **DENIES** Richard Weigandt's motions (Doc. Nos. 35, 36, 44, and 45). Each party to bear its own costs.

**SO ORDERED.**

**DATED: May 8, 2009**

                                                  /s/ ALLEN SHARP
                                        **ALLEN SHARP, JUDGE**
                                        **UNITED STATES DISTRICT COURT**